United States District Court
Southern District of Texas

**ENTERED**

September 30, 2022

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| JARVIS LIVINGSTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:21-CV-00007 |
| | § | |
| STATE OF TEXAS; JOHN DOE LOPEZ | § | |
| in his personal capacity; JANE DOE | § | |
| MENDOZA in her personal capacity; | § | |
| JOHN DOE ASSISTANT DISTRICT | § | |
| ATTORNEY in his personal capacity; | § | |
| KARL VAN SLOOTEN in his personal | § | |
| capacity; CITY OF YOAKUM; ANITA R. | § | |
| RODRIGUEZ; CARL O'NEILL; SEAN | § | |
| MOONEY; GLENN KLANDER; BILLY | § | |
| GOODRICH; AMANDA ORACK; and | § | |
| FRANK RHODEHAMEL, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

In the late hours of July 5, 2019 and into the morning of July 6, 2019, Officers Sarah Mendoza, Frank Rhodehamel, and Ben Lopez (hereinafter collectively "the Officers") arrested Plaintiff Jarvis Livingston (hereinafter "Livingston") in Yoakum, Texas. Responding to a fight in progress, the Officers detained Livingston after he exhibited aggressive behavior and refused to comply with their orders. Livingston continued to resist as the Officers put him in handcuffs using basic hands-on techniques. Unable to calm the situation due to Livingston's continued belligerence, Officer Lopez placed Livingston under arrest for public intoxication and transported him to the Lavaca County

Jail where he persisted in his refusal to cooperate with law enforcement.  (Dkt. No. 48 at 5).

Livingston brings this lawsuit under 42 U.S.C. § 1983, alleging false arrest and excessive force.  (Dkt. No. 1).  Livingston, proceeding *pro se* and *in forma pauperis,* provided a More Definite Statement with details of his claims.  (Dkt. No. 7).  After a *Spears* hearing,[1] Magistrate Judge Jason B. Libby issued a Memorandum and Recommendation ("M&R") that recommended retaining Livingston's claims of false arrest and excessive force against three police officers and dismissing all other claims under the screening criteria of 28 U.S.C. § 1915(e)(2)(B).  (Dkt. No. 10).  No objections were filed.  The undersigned accepted the M&R on October 12, 2021.  (Dkt. No. 30).

The only remaining defendants, Officers Sarah Mendoza, Frank Rhodehamel, and Ben Lopez (the "Officers"), move for summary judgment, arguing that they did not violate Livingston's constitutional rights and are entitled to qualified immunity.  (Dkt. No. 48 at 11-18).  Livingston filed a Response, (Dkt. No. 54), and an Affidavit, (Dkt. No. 55).  The Officers filed a Reply.  (Dkt. No. 56).  Livingston filed a Sur-Reply, (Dkt. No. 57), which the Officers have moved to strike.  (Dkt. No. 58).

The Court **TERMINATES** the referral of those motions to Magistrate Judge Libby.  For the following reasons, the Court **GRANTS** the Officers' Motion for Summary Judgment, (Dkt. No. 48), and **DISMISSES** this case **WITH PREJUDICE**.  The Officers' Motion to Strike, (Dkt. No. 58), is **DENIED** as moot.

---

[1]     A *Spears* hearing is "an evidentiary hearing in the nature of a motion for more definite statement."  *Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (internal quotations omitted).

I.      BACKGROUND

A.      LIVINGSTON'S ALLEGATIONS

Livingston's Complaint asserts that there was a conspiracy to violate his civil rights by the State of Texas, officials with the City of Yoakum, and officers from the Yoakum Police Department, who arrested him for being "drunk in public." (Dkt. No. 1 at 3-4).  His Complaint references several theories, including references to a conspiracy, (*id*. at 23-24, 29-30, 48, 54), but provides few details in support of his claims.  In his More Definite Statement, (Dkt. No. 7 ), Livingston explains that he had been arrested for public intoxication and resisting arrest at the Golden Oaks Apartments in Yoakum, Texas by "Police Officer John Doe Lopez," (*id*. at 2), and Officer "Jane Doe Mendoza," (*id*. at 4), but he provides no other details in support of his claim of conspiracy or the other theories referenced in his Complaint.  To screen the pleading under 28 U.S.C. § 1915(e)(2)(B), Judge Libby held a *Spears* hearing.  (Dkt. No. 13).

At the *Spears* hearing, Livingston clarified that he was at his aunt's house on the night of July 5, 2019, in Yoakum, Texas, when his brother and his cousin got into "an argument." (*Id*. at 11–12).  After "somebody" called the police to report a fight, (*id*. at 11), a "lady cop" identified as Officer Mendoza arrived at his aunt's residence and proceeded to grab Livingston by the wrist,  (*id*. at 12).  Livingston claims that he "pulled back" from her grasp because he hadn't done anything wrong.  (*Id*.).  According to Livingston, two male officers arrived—Officer Lopez and a John Doe Officer[2]—who then grabbed

---

[2]      Later identified as Officer Frank Rhodehamel. (Dkt. No. 33 at 1).

Livingston by the arms, advising him that he was being detained but was not under arrest. (*Id*. at 12–13). The John Doe Officer then tried to "wrestle" Livingston to the ground, but Livingston refused to comply because he had done nothing wrong. (*Id*. at 14). Livingston was taken to the Lavaca County Jail on charges of resisting arrest. (*Id*. at 14, 17). He was also charged with public intoxication. (*Id*. at 26). Although the original charges against Livingston were eventually dismissed, other charges were later filed against him for interference with a peace officer's public duties. (*Id*. at 20). Those charges were also eventually dismissed. (Dkt. No. 18-1); (Dkt. No. 18-2); (Dkt. No. 19 at 1).

Livingston contends that his arrest was unlawful and that the John Doe Officer used excessive force against him. (Dkt. No. 13 at 15–16). Livingston seeks $30 million in damages from the Officers for violating his rights under the Fourth Amendment. (Dkt. No. 7 at 7); (Dkt. No. 13 at 37). Based on these allegations, the Court authorized service of process for Officer Sarah Mendoza, Officer Ben Lopez, and the John Doe Officer, (Dkt No. 20), who was later identified as Officer Frank Rhodehamel, (Dkt. No. 33).

### B.   THE SUMMARY JUDGMENT MOTION AND EVIDENCE

The Officers move for summary judgment arguing that Livingston fails to establish that he was arrested without probable cause or that an unreasonable amount of force was used. (Dkt. No. 48 at 6). Arguing further that their actions were not objectively unreasonable in light of Livingston's conduct, the Officers assert that, regardless, they are entitled to qualified immunity. (*Id*.). In support, Officer Rhodehamel and Officer Mendoza provide affidavits, (Dkt. No. 48-1); (Dkt. No. 48-2), which are accompanied by patrol vehicle recordings of the incident, (Dkt. No. 48-3), and Officer Lopez's probable

4

cause affidavit in support of the charges against Livingston for resisting arrest, (Dkt. No. 48-4). The Officers have also provided additional exhibits in a flash drive on file with the Clerk's office. (Dkt. No. 50, Exh. 2-A); (Dkt. No. 50, Exh. 3). Finally, the Officers also provide excerpts from Livingston's deposition, (Dkt. No. 48-5), and an expert-witness affidavit from retired law enforcement officer Lynn Wilborn, (Dkt. No. 48-6).

The Officers maintain that Officer Rhodehamel was the first officer who responded to a 911 call of an "active disturbance" or fight at the Golden Oaks Apartments in Yoakum, shortly before midnight on Friday July 5, 2019. (Dkt. No. 48 at 1); (Dkt. No. 48-1 at 1); (Dkt. No. 48-6 at 2). Rhodehamel "[i]mmediately" encountered an individual who was later identified as Livingston's younger brother, TJ Hights (hereinafter "Hights"), next to a vehicle parked on the street and attempted to question him. (Dkt. No. 48-1 at 1). Hights was not cooperative and would not provide details about the fight. (*Id*. at 2).

Officer Mendoza was the second officer who responded to the 911 call. (Dkt. No. 48 at 1); (Dkt. No. 48-2 at 1). As she parked her patrol car, Officer Mendoza observed Officer Rhodehamel speaking to Hights, when Livingston "approach[ed] from behind two parked cars in an aggressive manner both verbally and physically." (*Id*.). According to Officer Rhodehamel, Livingston came running from the yard of the apartments and was "shouting" at him to "leave his brother alone." (Dkt. No. 48-1 at 1-2).

Officer Mendoza exited her patrol car and positioned herself in front of Livingston as he came between the two parked cars, to attempt to physically prevent him from reaching Officer Rhodehamel and also verbally tried to calm Livingston down. (Dkt. No.

48-2 at 2).  Livingston continued trying to reach Officer Rhodehamel and attempted to push Officer Mendoza out of the way.  (*Id*.).  When Rhodehamel observed Livingston fail to comply with Officer Mendoza's repeated commands, he intervened to prevent Livingston from hurting Mendoza.  (Dkt. No. 48-1 at 2).  While the officers attempted to escort Livingston to the front of the apartment complex, Livingston would not comply with repeated commands to calm down and continued to behave in "an aggressive and belligerent manner."  (*Id*.).

Audio from the recording system of Officer Mendoza's patrol vehicle confirms that Livingston was shouting and cursing at the officers while refusing repeated commands to "stop" and "calm down."  (Dkt. No. 50, Exh. 2A at 02:20–02:40).  Livingston continues his tirade for over ten minutes while he refuses their instructions to put his hands behind his back—resisting their efforts to detain him and frustrating their investigation of the reported disturbance at the apartment complex.  (*Id*. at 02:40–15:00).

Video from the recording system of Officer Lopez's patrol vehicle shows Officers Mendoza and Rhodehamel struggling with Livingston near a vehicle in front of the apartment complex when Officer Lopez arrives.  (Dkt. No. 50, Exh. 3 at 00:24-00:30).  Soon after Lopez arrives, the officers decide to place Livingston in handcuffs so they can address the initial 911 call.  (Dkt. No. 48-1 at 2); (Dkt. No. 48-2 at 2).  The officers state that Livingston actively resisted and prevented them from placing his hands behind his back.  (Dkt. No. 48-1 at 2); (Dkt. No. 48-2 at 2); (Dkt. No. 48-4 at 1).  Livingston is heard on the audio recording resisting and refusing to comply.  (Dkt. No. 50, Exh. 2-A at 03:08–05:00).  As he continued resisting the officers, Livingston reportedly moved his body in a forceful

manner, causing Officer Rhodehamel to fall.  (Dkt. No. 48-1 at 2); (Dkt. No. 48-2 at 2).  After a "short scuffle," Livingston was placed in handcuffs.  (Dkt. No. 48 at 3); (Dkt. No. 48-1 at 2); (Dkt. No. 48-2 at 2).  The officers report that no force "beyond a basic hands-on technique" was used to place Livingston in handcuffs, (Dkt. No. 48 at 3), and that no "OC Spray, taser or baton was ever used."  (Dkt. No. 48-1 at 2); (Dkt. No. 48-2 at 2).

Once handcuffed, Livingston continued to actively resist the officers and their efforts to get him into the back of a patrol car.  (Dkt. No. 48-1 at 2); (Dkt. No. 48-2 at 2).  He also continued to yell and argue with Hights, his brother, as he stood near the patrol car.  (Dkt. No. 48-4 at 2).  All three officers believed that Livingston was intoxicated.  (Dkt. No. 48-1 at 2); (Dkt. No. 48-2 at 2);  (Dkt. 48-4 at 2).  On the audio recording, Officer Mendoza comments that Livingston looks and smells intoxicated.  (Dkt. No. 50, Exh. 2-A at 14:39).  In his affidavit, Officer Lopez states that he "could smell the odor of alcoholic beverage emitting from [Livingston's] breath as he yelled and cursed at Officer Rhodehamel for putting his hands on him."  (Dkt. No. 48-4 at 2).  Officer Lopez could also "see that [Livingston's] eyes were blood shot, he was slurring his words, and he was very aggressive towards the Officers."  (*Id.*).

Because Officer Lopez believed that Livingston may have been a danger to himself or others based on his behavior, Lopez advised Livingston that he was under arrest for public intoxication.  (Dkt. No. 48-4 at 2).  At this point, Livingston began to resist even more.  (Dkt. No. 48-1 at 2); (Dkt. No. 48-2 at 2).  On the audio recording, Livingston insists that he is not drunk, while continuing to shout and curse at the officers, threatening to "sue the fuck out of all [them]."  (Dkt. No. 50, Exh. 2A at 12:50–15:00).  When Livingston

7

resisted efforts to place him in the back of a patrol car, Officer Lopez told Livingston that they were going to use "the WRAP restrain system" to transport him.  (Dkt. No. 48-4 at 2).  The Wrap was never used.  (Dkt. No. 48 at 5); (Dkt. No. 48-2 at 2).  Although Livingston told the officers that he would get into the car, he continued to resist by refusing to put his legs in the vehicle.  (Dkt. No. 48-4 at 2); (Dkt. No. 50, Exh. 2-A at 16:24–17:50).  Officer Lopez concluded that Livingston was "resisting arrest, search, or transport."  (Dkt. No. 48-4 at 2).

## II.    LEGAL STANDARDS

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which provides that a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  In its determination, "a court must view the evidence in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 657, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014) (per curiam) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L.Ed.2d 142 (1970)).

If the movant demonstrates the absence of a genuine issue of material fact, the burden ordinarily shifts to the non-movant to provide "specific facts showing the existence of a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis omitted). However, "[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) (internal quotation marks omitted).

"Qualified immunity is a complete defense, and [a defendant is] entitled to summary judgment on the basis of qualified immunity unless [the plaintiff] can show triable issues as to whether [the defendant] violated a clearly established right of which a reasonable officer would have been aware." *Brewer v. Hayne*, 860 F.3d 819, 824 (5th Cir. 2017). When a defendant pleads qualified immunity, the plaintiff "must rebut the defense by establishing a genuine fact [dispute] as to whether the official's allegedly wrongful conduct violated clearly established law." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (alteration in original). A plaintiff cannot satisfy this burden with conclusory allegations based on speculation or unsubstantiated assertions of wrongdoing. *See Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018). In addition, courts are not obliged to accept factual allegations that are "blatantly contradicted" by video recordings taken at the scene. *Buehler v. Dear*, 27 F.4th 969, 979 (5th Cir. 2022) (internal quotation marks omitted); *see also Tucker v. City of Shreveport*, 998 F.3d 165, 179 (5th Cir. 2021) ("Nevertheless, because there is video and audio recording of the event, we are not required to accept factual allegations that are blatantly contradicted by the record.") (internal quotation marks omitted).

The Court is mindful that because Livingston represents himself, his pleading is entitled to a liberal construction, meaning it is subject to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam).  Even under this lenient standard, *pro se* litigants are expected to "properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (footnotes and citations omitted).  Courts are not required "to scour the record in search of evidence to defeat a motion for summary judgment; [courts] rely on the nonmoving party to identify with reasonable particularity the evidence upon which he relies." *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 555 n.7 (5th Cir. 2016) (internal quotations omitted).

## III.   DISCUSSION

### A.   QUALIFIED IMMUNITY

The Officers invoke the defense of qualified immunity, which protects government officials from personal liability for monetary damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).  Qualified immunity is designed to give public servants "breathing room to make reasonable but mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law."  *Messerschmidt v. Millender*, 565 U.S. 535, 546, 132 S.Ct. 1235, 1244, 182 L.Ed.2d 47 (2012) (internal quotation marks

omitted). Qualified immunity shields public officials from claims for monetary damages unless a plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (citing *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738).

Courts have discretion to decide the order in which to consider the two-prong inquiry when determining whether qualified immunity is warranted. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). For reasons discussed in more detail below, the Court concludes that the officers in this case are entitled to qualified immunity under the first prong of the inquiry because Livingston does not demonstrate that the officers lacked probable cause for his arrest or that excessive force was used against him in violation of his constitutional rights.

## B.   FALSE ARREST

Livingston contends that the Officers violated his constitutional rights because there was no probable cause to arrest him for public intoxication or resisting arrest, noting that all the charges against him were dismissed in state court. (Dkt. No. 13 at 18–20); (Dkt. No. 54 at 4); (Dkt. No. 55 at 3 ¶¶ 47–49). The Officers counter that Livingston's claim fails because there was probable cause to arrest him for at least one, if not all, of the following violations of Texas law: resisting arrest; interfering with a peace officer's public

11

duties; disorderly conduct; and public intoxication. (Dkt. No. 48 at 11).  In support, the Officers point to their own statements and the affidavit from retired law enforcement officer Lynn Wilburn.  (*Id*. at 11 n.54).  In his affidavit, Wilburn states that a reasonable peace officer would conclude that there was probable cause for an arrest for these offenses.  (Dkt. No. 48-6 at 2–4).  The Court agrees with the Officers.  Based on the facts that were known to the Officers on the night of the incident, there was probable cause to arrest Livingston for each of enumerated offenses.

Livingston's claim of false arrest arises under the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  "Because arrests are 'seizures' of 'persons,' they must be reasonable under the circumstances." *District of Columbia v. Wesby*, ____ U.S. ____, ____, 138 S. Ct. 577, 585, 199 L.Ed.2d 453 (2018).  "A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *Id* at 586.

Probable cause for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense.  *See Beck v. State of Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 225, 13 L.Ed.2d 142 (1964); *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004).  "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of*

*Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 1557, 149 L.Ed.2d 549 (2001);  *see also* Tex. Code Crim. Proc. Ann. art. 14.01(b) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.").  The existence of probable cause for any offense is sufficient to defeat a claim of false arrest, even if the offense giving rise to probable cause is not the same as or even closely related to the offense articulated by the officer at the scene. *See Devenpeck v. Alford*, 543 U.S. 146, 153–55, 125 S.Ct. 588, 593–95, 160 L.Ed.2d 537 (2004).

### 1.   <u>Resisting Arrest</u>

Because of the aggressive and belligerent manner in which Livingston actively resisted the Officers, all three of the Officers concluded that there was sufficient probable cause to arrest Livingston for resisting arrest.  (Dkt. No. 48-1 at 2); (Dkt. No. 48-2 at 2); (Dkt. No. 48-4 at 1-2).  A person commits the offense of resisting arrest in violation of Texas law "if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another."  Tex. Penal Code § 38.03(a).  Evidence provided by the Officers shows that Livingston physically confronted the officers, yelling and cursing at them in an abusive manner.  (Dkt. No. 48-1 at 2); (Dkt. No. 48-2 at 2); (Dkt. No. 50, Exh. 2-A at 02:00–15:00); (Dkt. No. 50, Exh. 3 at 00:24–00:30).  The audio recording of this encounter records Livingston interrupting the officers' efforts to investigate the reported 911 call and causing the situation to become more chaotic by disobeying the officers' repeated commands while shouting and cursing at them.  (Dkt. No. 50, Exh. 2-A at 02:00-15:00).

Livingston continues to behave in a combative, belligerent manner by resisting the Officers' efforts to place him in handcuffs and place him in the back of a patrol car.   (*Id*.).

Although Livingston states that he was "not doing anything wrong" and that the officers aggressively "manhandle[d]" him for no reason, (Dkt. No. 55 at 2 ¶ 14), a court need not accept a version of events that is "blatantly contradicted" by video and audio recordings of the confrontation.  *See Buehler*, 27 F.4th at 979.  Livingston admitted at the *Spears* hearing that he pulled away from Officer Mendoza's grasp and scuffled with the officers at the scene of the reported disturbance on the night of July 5, 2019, which was captured in the recording.  (Dkt. No. 13 at 12–14); (Dkt. No. 50, Exh. 3 at 00:24–00:30).  Pulling out of an officer's grasp is sufficient to constitute resisting arrest in violation of Texas law.  *See Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013) (collecting cases).  Thus, the evidence reflects that Livingston physically resisted the officers' efforts to detain him in handcuffs while they investigated the 911 call and that the officers could have reasonably believed that there was probable cause to arrest Livingston for violating Section 38.03(a) of the Texas Penal Code.  (Dkt. No. 48-6 at 4).

## 2.    <u>Interfering with a Peace Officer's Public Duties</u>

The same evidence supports a finding that there was probable cause to arrest Livingston for interfering with their public duty to investigate the 911 call of an active disturbance.  A person commits the offense of interference with a Texas peace officer's public duties "if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law[.]"  Tex. Penal Code § 38.15(a)(1).

14

Failure to comply with a police officer's instructions at the scene of an offense is sufficient probable cause for an arrest for interference with a peace officer's public duties. *See Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017); *see also Berrett v. State*, 152 S.W.3d 600, 603–05 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (finding sufficient evidence of interference with public duties where the defendant repeatedly pulled away and moved his arm out of the officer's reach to prevent being placed in handcuffs despite the officer's multiple commands to place his hands behind his back).

Livingston appears to argue that the officers lacked probable cause to arrest him for interfering with their official duties because he was merely exercising his First Amendment right to free speech. (Dkt. No. 57 at 7-8). Indeed, it is a defense to prosecution for interference with public duties if "the interruption, disruption, impediment, or interference alleged consisted of speech only." Tex. Penal Code § 38.15(d). But the record does not support Livingston's claim that his conduct amounted to no more than protected speech because it reflects that Livingston refused to obey repeated commands to calm down and physically resisted efforts to detain him. *See Barnes v. State*, 206 S.W.3d 601, 605 (Tex. Crim. App. 2006) (concluding that a defendant's acts of defiance were more than mere speech and were sufficient evidence of interference with public duties). Thus, the evidence is enough that a reasonable officer could have believed there was probable cause to arrest Livingston on charges of interfering with a peace officer's public duties.

### 3.   **Disorderly Conduct**

Moreover, the evidence reflects that a reasonable officer had probable cause to arrest Livingston for disorderly conduct.  Livingston engaged in an abusive, profanity-laden tirade directed at the officers, which resulted in a physical confrontation and a loud disturbance on the night of July 5, 2019.  (Dkt. No. 50, Exh. 2-A at 2:00–15:00); (Dkt. No. 30 at 00:24–00:30).   A person engages in disorderly conduct if he "intentionally or knowingly" uses "abusive, indecent, profane, or vulgar language in a public place, and the language by its very utterance tends to incite an immediate breach of the peace[.]" Tex. Penal Code § 42.01(a)(1).   Texas courts have defined and interpreted the term "breach of the peace" to mean an act that disturbs or threatens to disturb the tranquility enjoyed by the citizens. *See Ross v. State*, 802 S.W.2d 308, 315 (Tex. App.—Dallas 1990, no pet.). On the audio recording, Livingston is heard loudly berating the officers, refusing to obey their repeated commands to calm down, arguing with them, and creating a disturbance in the middle of the night outside an apartment complex where a fight had been reported.  (Dkt. No. 50, Exh. 2A at 02:00–15:00);  (Dkt. No. 30 at 00:24–00:30).   Under these circumstances, a reasonable officer could have believed there was probable cause to arrest Livingston on charges of disorderly conduct in violation of Section 42.01(a)(1) of the Texas Penal Code.

### 4.   **Public Intoxication**

Finally, Livingston's combative behavior and his demeanor also gave the officers reason to suspect that he was intoxicated.  (Dkt. No. 48-1 at 2); (Dkt. No. 48-2 at 2); (Dkt. 48-4 at 2).  A person commits the offense of public intoxication if he "appears in a public

16

place while intoxicated to the degree that [he] may endanger [himself] or another." Tex.

Penal Code § 49.02(a).  The recording from the patrol vehicle shows that Officer Mendoza

observes signs of intoxication during Livingston's tantrum and advises him of as much,

telling him that he looks and smells intoxicated.  (Dkt. No. 50, Exh. 2-A at 14:40).  Shortly

after making this observation, Officer Mendoza speaks with a witness at the scene of the

disturbance who advises her that "everyone" was drinking that night.  (*Id*. at 19:00–20:15).

Officer Lopez also reportedly smelled alcohol on Livingston's breath as he yelled at the

officers and behaved in a combative, confrontational manner.  (Dkt. 48-4 at 2).  Under the

circumstances, the officers could have reasonably concluded that Livingston was a

danger to himself or others as a result of intoxication and that there was probable cause

to arrest him for public intoxication.  *See Gibson v. Rich*, 44 F.3d 274, 277–78 (5th Cir. 1995).

***

To defeat qualified immunity, Livingston argues that he was not drunk and notes

that there was no "breathalyzer or sobriety test" done to prove that he was intoxicated.

(Dkt. No. 55 at 3 ¶ 31); (Dkt. No. 57 at 6).  But the inquiry is not whether there was

sufficient proof of an offense.  Rather, the inquiry is whether the officers had probable

cause to believe Livingston was intoxicated.  Even if the officers were mistaken about

whether there was probable cause, they are still entitled to qualified immunity under

these circumstances.  *See Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040-41,

97 L.Ed.2d 523 (1987) ("We have recognized that it is inevitable that law enforcement

officials will in some cases reasonably but mistakenly conclude that probable cause is

17

present, and we have indicated that in such cases those officials — like other officials who act in ways they reasonably believe to be lawful — should not be held personally liable.").

Livingston contends further that he was falsely arrested because all the charges lodged against him were dismissed by the state prosecutor.  (Dkt. No. 54 at 4).  Yet the fact that charges were dismissed "is of no consequence" when considering a claim of false arrest.  *Babb v. Dorman*, 33 F.3d 472, 479 (5th Cir. 1994).  "The Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted — indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145, 99 S. Ct. 2689, 2695, 61 L.Ed.2d 433 (1979).  "The claim for false arrest does not cast its primary focus on the validity of each individual charge; instead, [the court must] focus on the validity of the arrest." *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995).  Livingston has not met his burden to defeat qualified immunity on his false arrest claim.  *See Dyer*, 964 F.3d at 380.

As outlined above, the record shows that there was probable cause to arrest Livingston for several offenses on the night of July 5, 2019.  Because Livingston has not met his burden to demonstrate that there was no probable cause to arrest him for any offense, he fails to establish that a constitutional violation occurred or to negate the Officers' entitlement to qualified immunity.  Therefore, Livingston's false-arrest claim fails as a matter of law and the Officers' Motion for Summary Judgment on this issue is granted.

C.      CLAIM OF EXCESSIVE FORCE DURING AN ARREST

Livingston argues that excessive force was used when the officers placed their hands on him and attempted to restrain him.  (Dkt. No. 48-5 at 5, 7-11).  In particular, Livingston appears to claim that Officer Rhodehamel put his arm around his neck and tried to force him to the ground without cause because he was not resisting.  (*Id.* at 5); (Dkt. No. 13 at 14).  The Officers argue that they used only the minimal amount of force necessary to gain control of Livingston, even though a greater degree of force would have been justified under the circumstances.  (Dkt. No. 48 at 14-15).

To prevail on an excessive-force claim under the Fourth Amendment, a plaintiff must show that he suffered (1) "an injury" that (2) resulted "directly and only from" an officer's use of force that was "clearly excessive" and (3) "objectively unreasonable." *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) (quoting *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020)).  The Supreme Court has outlined the following considerations that inform the need for force in the Fourth Amendment context: (1) the severity of the crime committed; (2) whether the suspect posed an immediate threat to the safety of officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight.  *See Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L.Ed.2d 443 (1989).

The Fourth Amendment inquiry objective and is determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.*; *see also Lombardo v. City of St. Louis, Mo.*, ____ U.S. ____, ____, 141 S. Ct. 2239, 2241, 210 L.Ed.2d 609 (2021) (per curiam) (a reviewing court must ask "whether the

officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them.'') (quoting *Graham*, 490 U.S. at 397, 109 S.Ct. at 1872).  This "calculus of reasonableness" must include "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97, 109 S.Ct. at 1872; *see also Plumhoff v. Rickard*, 572 U.S. 765, 775, 134 S.Ct. 2012, 2020, 188 L.Ed.2d 1056 (2014).

Livingston fails to meet the first criterion for making an excessive-force claim because he does not allege or show that he suffered any injury as a result of force applied by the Officers during his arrest.  Although a plaintiff need not demonstrate a significant injury, he must have suffered some harm that was more than *de minimis* to demonstrate that excessive force was used.  *Westfall v. Luna*, 903 F.3d 534, 549 (5th Cir 2018) ("Although we no longer require 'significant injury' for excessive force claims, the injury must be more than *de minimis*." (Citation omitted)).

Livingston admitted during his deposition that the officers did not use a taser or chemical spray and that he was not kicked or hit with a baton during his arrest.  (Dkt. No. 48-5 at 9–11).  To the extent that he appears to have complained at one point that handcuffs were placed on his wrist too tightly, Livingston does not dispute Officer Lopez's statement that he loosened the handcuffs when asked.  (Dkt. No. 48-4 at 1).  Even if Livingston endured momentary discomfort from the handcuffs, minor or incidental injuries that occur in connection with the use of restraints typically do not give rise to a constitutional violation.  *See, e.g., Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)

(holding that "handcuffing too tightly, without more, does not amount to excessive force"); *Westfall*, 903 F.3d at 550 ("This court has held the following types of injuries to be *de minimis*: abrasions, back and neck pain, and contusions.").  Because the evidence does not establish that Livingston suffered an actionable injury, he cannot prevail on a claim of excessive force in connection with his arrest.  *See Westfall*, 903 F.3d at 549–50.

Livingston also does not show that the amount of force used was unreasonable or excessive to the need under the second and third prongs of the inquiry.  *See Betts*, 22 F.4th at 582.  As noted above, the record reflects that the Officers responded to a 911 call reporting a fight in progress in the middle of the night without having any knowledge of the number of combatants or whether weapons were involved.  (Dkt. No. 48-6 at 2).  Based on the evidence of Livingston's aggressive demeanor a reasonable officer could have concluded that he posed a potential threat to their safety and that some force was warranted after he refused their repeated commands to calm down and stop interfering with their investigation of the 911 call.  (Dkt. No. 50, Exh. 2-A at 2:00–15:00).  "Facing an uncooperative arrestee, officers properly use measured and ascending actions that correspond to [an arrestee's] escalating verbal and physical resistance."  *Betts*, 22 F.4th at 582.  The evidence from the recording system from Officer Mendoza's patrol vehicle, which captures Livingston's aggressive demeanor and repeated refusal to cooperate, confirms that officers attempted to reason with him and that they did not immediately resort to force "without attempting to use physical skill, negotiation, or even commands." *Id.* at 583 (internal quotations omitted).  Given the facts, Livingston has also not carried

his burden to defeat qualified immunity as to his excessive force claim. *See Dyer*, 964 F.3d at 380.

***

Absent a showing that Livingston sustained any injury or that force was used unreasonably under the circumstances, Livingston does not demonstrate that the officers used force in a manner that was excessive to the need for gaining his compliance. Because Livingston does not show that a constitutional violation occurred, the Officers are entitled to qualified immunity from Livingston's claims and summary judgment in their favor.

## IV.   CONCLUSION

For the above reasons, the Court **GRANTS** the Motion for Summary Judgment filed by Officers Sarah Mendoza, Frank Rhodehamel, and Ben Lopez. (Dkt. No. 48). Having considered all the submissions and found no genuine issue of material fact, the Court **DENIES** as moot the Motion to Strike Livingston's Sur-Reply. (Dkt. No. 58).

It is SO ORDERED.

Signed on September 29, 2022.

_Drew B. Tipton_

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**
